## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GHOLAMALI SHARIFISHOURABI, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 23-3382 (RC) |
| | : | |
| v. | : | Re Document Nos.:   7, 8 |
| | : | |
| ANTONY J. BLINKEN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO COMPEL**

## I.  INTRODUCTION

Plaintiffs Dr. Gholamali Sharifishourabi and Solmaz Zamanishourabi, citizens of both Iran and Canada, bring this suit to compel Defendant Antony Blinken, in his official capacity as Secretary of the U.S. Department of State ("DOS"), to adjudicate their and their two minor children's immigrant visa applications, which have now been stuck in administrative processing for approximately twenty-six months.  *See generally* Compl., ECF No. 1.  In their complaint, Plaintiffs allege that Defendant has violated the Administrative Procedure Act and the Immigration and Nationality Act by unlawfully and unreasonably delaying action on their family's visa applications.  Defendant moves to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs oppose Defendant's motion and, separately, move to compel the Secretary to produce a certified list of the administrative record pursuant to Local Civil Rule 7(n).  For the reasons set forth below, the Court grants Defendant's motion to dismiss and denies Plaintiffs' motion to compel.

## II.  FACTUAL BACKGROUND

### A.  Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to various categories of immigrants seeking to enter the United States.  *See* 8 U.S.C. § 1154; *see also* 22 C.F.R. § 42.71.  One such category includes foreign professionals holding an advanced degree and persons with "exceptional ability."  *See* 8 U.S.C. § 1153(b)(2). Pursuant to 8 U.S.C. § 1153(b)(2), these individuals may apply for lawful permanent residence in the United States by filing a second preference employment-based petition (an "EB-2" petition). *See id.*  Spouses and unmarried children under the age of twenty-one may be included as derivative applicants on an approved EB-2 petition.  Vol. 9, Foreign Affairs Manual ("FAM") § 502.4-3(F).  EB-2 applicants generally must possess both a job offer in the United States and a certification from the Department of Labor, *see* 8 C.F.R § 204.5(k), but Congress has empowered U.S. Citizenship and Immigration Services ("USCIS") to waive either requirement when doing so is "in the national interest," *see* 8 U.S.C. § 1153(b)(2)(B)(i).

If USCIS issues a so-called "national interest waiver" and approves an applicant's EB-2 petition, the case is forwarded to the National Visa Center ("NVC"), DOS's visa processing center.  8 C.F.R. § 204.5(n).  NVC processes the requisite materials and then schedules an interview between the applicant and a consular officer at the embassy or consulate with jurisdiction over the applicant's residence.  *See* 22 C.F.R. § 42.62.  Following the interview, the consular officer must either issue or refuse the visa.  *Id.* § 42.81(a).  If the consular officer decides that additional security screening is necessary to determine an applicant's eligibility, the officer must refuse the application under INA section 221(g) pending additional information or the conclusion of further administrative processing.  *See* 8 U.S.C. § 1201(g); 9 FAM § 504.11-

3(B)(2)(a) ("If, after interviewing the applicant, you decide that [a security advisory opinion] is necessary, first refuse the applicant under [section] 221(g)."). The FAM categorizes section 221(g) refusals issued for the purpose of conducting additional security screening as "Quasi-Refusal Cases." *See* 9 FAM § 504.11-3(B); *see also id.* § 504.11-3(B)(2)(a) ("If it is later determined based on the Department's [advisory opinion] that the applicant is ineligible under a provision of [section] 212(a) or [section] 212(e) [of the INA], the applicant should then be refused under the pertinent section.").

### B.  Factual Background

As mentioned above, Plaintiffs Dr. Sharifishourabi and Ms. Zamanishourabi, in addition to their two minor children, are nationals of both Iran and Canada and currently reside in Canada. Compl. ¶¶ 17–19.  Dr. Sharifishourabi is an R&D Manager who has published more than 20 papers with 134 citations.  *Id.* ¶ 17.  In December 2019, he filed an immigrant visa application under an approved EB-2 national interest waiver with the NVC.  *Id.* ¶¶ 4, 44.  In April 2022, the Sharifishourabi family was interviewed at the U.S. Consulate in Montreal.  *Id.* ¶ 6.  Following the interview, the consular officer refused the family's visa applications under section 221(g), finding that additional security screening was necessary.  *Id.* ¶¶ 6, 45.  The following day, Dr. Sharifishourabi received an email instructing him to complete Form DS-5535—a form which requires visa applicants to provide supplemental information on things such as their travel history, family members, and social media usage.  *See id.* ¶ 45.  He submitted the completed form a few days later.  *Id.*

Over two years have passed since then, yet the family's visa applications remain refused pending further administrative processing.[1]  *Id.* ¶¶ 46, 47; *see also* Ex. A, Compl., ECF No. 1-1. According to Plaintiffs, this delay has caused them particularized and concrete harm, including by disrupting Dr. Sharifishourabi's career progression, creating financial instability, making it more difficult for he and his wife to plan for the educational upbringing of their minor children, and by preventing them from "putting down roots."  Compl. ¶¶ 51–53.

### C.  Procedural Background

On November 10, 2023—just over a year and a half after the consular officer refused their visa applications to conduct additional security screening—Dr. Sharifishourabi and his wife filed a two-count complaint to compel the Secretary to adjudicate their family's applications. *See generally* Compl.  Plaintiffs maintain that Defendant retains jurisdiction over their visa applications and further allege that Defendant's delay is unlawful and unreasonable under the Administrative Procedure Act ("APA") and the Mandamus Act.  *Id.* ¶¶ 48, 50.  In their complaint, Plaintiffs request that this Court mandate that Defendant adjudicate their visa applications within twenty-one days.  Compl. at 21.

The Secretary has moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Def's. Mot. to Dismiss ("Def.'s Mot.") at 1, ECF No. 7. Plaintiffs oppose Defendant's motion to dismiss, *see* Pls.' Opp'n to Mot. to Dismiss ("Pls.' Opp'n") at 1, ECF No. 10, and move to compel Defendant to produce a certified list of the administrative record pursuant to Local Civil Rule 7(n), *see* Pls.' Mot. to Compel at 1, ECF No. 8.

---

[1] As of publication of this Opinion, Plaintiffs' applications (Case Number: MTL2018593017) remain refused per the NVC status checker. Bureau of Consular Affairs, U.S. Department of State, *Visa Status Check*, https://ceac.state.gov/CEACStatTracker/Status.aspx?App=NIV (last visited July 29, 2024).

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, on a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

In determining whether there is jurisdiction, the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Courts must accept as true all factual allegations in the complaint and must also construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001).  Furthermore, "[t]he Court need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a

plaintiff's legal conclusions." *Arabzada v. Donis*, No. 23-cv-655, 2024 WL 1175802, at *2 (D.D.C. Mar. 19, 2024); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

## B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require plaintiffs to properly "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To that end, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

# IV.  ANALYSIS

The Secretary moves to dismiss Plaintiffs' complaint on four grounds.  He argues that (1) Plaintiffs named the improper defendant—the Secretary of State—because the Secretary has no role in adjudicating visa requests; (2) the doctrine of consular nonreviewability bars judicial review; (3) there is no discrete agency action that a consular officer is required to take in adjudicating a specific visa application; and (4) Plaintiffs fail to state viable claims of relief for unreasonable delay under the APA and Mandamus Act.  *See* Def.'s Mot. at 1–2.  The Court rejects Defendant's first three arguments but grants the motion on the ground that Plaintiffs fail to state viable claims for relief.[2]

## A.  Improper Defendant

The Secretary first argues that Dr. Sharifishourabi and his family lack standing to pursue an unreasonable delay claim against the Secretary of State.  Defendant maintains that consular officials have the sole power to adjudicate visa applications, that the Secretary of State cannot compel further action on Plaintiffs' visa applications, and, thus, that the Secretary cannot take any action that would redress Plaintiffs' injury.  Def's Mot. at 5; *see Lujan*, 504 U.S. at 561

---

[2] Because the Court dismisses all of Plaintiffs' claims, it denies their motion to compel as moot.  In any event, Plaintiffs' contention that the Secretary's motion to dismiss should be denied for failure to comply with Local Civil Rule 7(n)(1) is meritless.  This rule generally requires agencies involved in cases reviewing "administrative agency actions" to file the administrative record "within 30 days [of] service of the answer to the complaint or simultaneously with the filing of a dispositive motion."  *See* D.D.C. LCvR 7(n)(1).  Defendant asserts that, despite Plaintiffs' APA claims, the Local Rule does not apply here because the basis of the petition is agency inaction (as opposed to agency action).  *See* Def.'s Opp'n to Mot. to Compel ("Def.'s Opp'n") at 1, ECF No. 9; *see also* Def.'s Mot. at 26 n.4.  In the alternative (and assuming the rule does apply), Defendant asks the Court to waive the rule's requirements.  Def.'s Opp'n at 4 n 1.  Regardless of whether Defendant's waiver request was properly submitted in his original motion to dismiss, the Court will grant Defendant's request to waive compliance with Local Civil Rule 7(n) because "the administrative record is not necessary for [the court's] decision."  *See Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022) (alteration in original) (quoting *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018); *see also Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *3 n.3 (D.D.C. July 14, 2022).

(explaining that for a plaintiff to have standing, it must be "likely, as opposed to merely speculative, that the [asserted] injury will be redressed by a favorable decision").

Like many (but not all) other courts in this jurisdiction to have previously considered the issue, the Court rejects Defendant's argument. *See, e.g.*, *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10–11 (D.D.C. 2022); *but see Munyaneza v. Blinken*, No. 21-cv-2778, 2022 WL 4598629, at *2 (D.D.C. Sept. 30, 2022) (dismissing similar visa-delay claim against Secretary of State but finding consular official was a properly named defendant).  That is because the Secretary's argument is based on a false equivalence between control over a consular officer's ultimate yes-or-no visa determination, and control over the timing by which the consular officer renders that decision or by which other agency officials conduct additional security vetting sufficient to reach it.  *See* Def's. Mot. at 5.  To be sure, the INA "grants consular officers 'exclusive authority to review applications for visas, [and] preclud[es] even the Secretary of State from controlling their determinations.'"  *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  But although the Secretary lacks authority to direct a specific outcome with respect to the Sharifishourabi family's visa adjudications, Defendant, in his official capacity as head of DOS, may direct both consular officers and analysts in the Office of Screening, Analysis and Coordination preparing Security Advisory Opinions in response to section 221(g) refusals, "to conclude . . . matter[s] presented to [them]" "within a reasonable time."[3]  *See* 5 U.S.C. § 555(b); *Al-Gharawy*, 617 F. Supp. 3d at 10.  Indeed, the Secretary elsewhere appears to acknowledge this point.  *See* Def.'s Mot. at 14 (explaining that Congress's

---

[3] "In any case in which a [Security Advisory Opinion] is required, a consular officer must wait for a response, which will provide a recommendation on whether sufficient information exists to support a security-related ineligibility finding."  Ex. C, Pls.' Opp'n, Decl. of Carson Wu at ¶ 19, ECF No. 10-3.

decision to "[g]rant[] the Secretary 'the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication'").  Therefore, the Court will not grant Defendant's motion to dismiss Plaintiffs' complaint for lack of standing.

### B.  Consular Non-Reviewability

Defendant next argues that the doctrine of consular non-reviewability precludes judicial review in this instance.  *See* Def's. Mot. at 6–11.  As its name suggests, the consular non-reviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review."  *Baan Rao*, 985 F.3d at 1024; *see also Saavedra Bruno*, 197 F.3d at 1160 ("[C]onsular visa determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien").  Defendant acknowledges that there are "two narrow" exceptions to this general prohibition, *see* Def.'s Mot. at 7 (quoting *Baan Rao*, 985 F.3d at 1024), but argues that neither apply to "a suit seeking to compel a further decision on visa applications that have already been refused," *see id.*  Defendant concludes, therefore, that the general bar applies and that the consular official's decision to refuse Plaintiffs' visa applications "is immune from review."  *See id.* at 9.

The Court will assume, favorably to Plaintiffs, that the doctrine of consular non-reviewability does not bar review of their claims.  As Defendant concedes, multiple "judges in this District have held that the [consular non-reviewability] doctrine does not apply in cases where, as here, a consular officer has refused the visa applications under" section 221(g).  *See id.* at 8.  Those courts have explained that "the consular nonreviewability doctrine applies only to *final* decisions"; it "does not bar judicial review of a consular officer's delay when a visa

application has been *provisionally refused pending a final decision*."  *See Al-Gharawy*, 617 F. Supp. 3d at 11 (emphases added) (collecting cases).  Defendant counters that the consular officer's refusal of Plaintiffs' visa application *was* a final decision.  *See* Def's. Mot. at 9.  In other words, he argues that the Sharifishourabi family's visa applications were not conditionally or provisionally refused, but rather that the consular officer's refusal of their visas was a "final" decision "until and unless superseded by another decision."  *See id.*

Until recently, the Court would be inclined to disagree with Defendant's characterization. After all, courts have consistently held that where, as here, a visa "application is still undergoing administrative processing," the State Department's "decision is not final" "even where a refusal has been relayed."  *See Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397, 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *see also Al-Gharawy*, 617 F. Supp. 3d at 16–17 (concluding that the doctrine of consular non-reviewability did not apply to review of application in "administrative processing" after section 221(g) "refusal"); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020) (same).  Put another way, "any [p]laintiff with an application in 'administrative processing' has not yet received a final decision."  *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287 (D.D.C. 2016).

The Circuit's recent, unpublished decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), casts doubt on the accuracy of the reasoning in those decisions.  In *Karimova*, the court explained that once a consular official refuses a visa application, the visa has been "officially refused."  *Id.* at *2.  That is so even if the consular officer simultaneously chooses to place the application in administrative processing: a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open

10

and re-adjudicate the applicant's case." *Id.*  Applied here, *Karimova* thus suggests that once "[a] consular officer reviewed [Plaintiffs'] application[s], interviewed [Plaintiffs], and ruled that no visa would be granted," their visa applications were "officially refused" notwithstanding the later placement of Plaintiffs' applications in administrative processing.  *See id.* at *4.

The Court need not conclusively determine the extent to which *Karimova* disrupts prior decisions rejecting the government's reliance on the consular non-reviewability doctrine in cases similar to this one.  *See id.* at *5 (declining to "decide whether th[e] principle of [consular] nonreviewability applies in this case, which purports to challenge the timing rather than content of a consular visa decision").  That is because, as illustrated below, Plaintiffs' claims fail on their merits in any event.

### C.  Clear and Non-Discretionary Duty

Next, the Secretary contends that Plaintiffs' claims fail because the law does not impose upon a consular officer a clear, non-discretionary duty to adjudicate any *particular* immigrant visa application.  *See* Def's. Mot. at 12.  More specifically, he contends that neither the INA nor the APA give rise to a "clear duty to adjudicate any specific visa application or to readjudicate a visa after it has been refused."  *See id.*  Plaintiffs disagree; they argue that the INA (as well as its implementing regulations) and the APA create a "mandatory duty" requiring Defendant to conclusively adjudicate their visa applications.  *See* Pls.' Opp'n at 23–29.

The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  Among other things and as relevant here, "[t]o state a claim for unreasonable delay" under the APA, a plaintiff must allege "that the agency 'failed to take a *discrete agency action* that it is *required to take*.'"  *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (emphases added) (quoting *Norton v. S. Utah Wilderness*

*All.*, 542 U.S. 55, 64 (2004)).  In other words, "the APA 'allows courts to provide relief for [an agency's] failure to act,'" but only when an agency has failed to take a specific, mandatory action.  *Arabzada*, 2024 WL 1175802, at *4 (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 14 (D.D.C. 2022)).  By a similar token, courts may resort to the "'drastic' remedy" of mandamus only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a *clear duty to act*; and (3) there is no other adequate remedy available to plaintiff."  *Babamuradova*, 633 F. Supp. 3d at 19 (emphasis added) (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)).  There is thus a common theme: to proceed under either the APA or the Mandamus Act based on a claim of "an agency's unreasonable delay . . . , a plaintiff must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action."  *Arabzada*, 2024 WL 1175802, at *4 (D.D.C. Mar. 19, 2024); *see also Babamuradova*, 633 F. Supp. 3d at 19 ("What plaintiffs must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances plaintiffs must establish that the government has a clear, nondiscretionary duty.").

Here, too, the Court will assume favorably to Plaintiffs that their complaint identifies a clear, non-discretionary duty.  This is a generous assumption given that Plaintiffs largely (if not exclusively) rely on section 555(b) of the APA as the source of such a duty.  *See* Pls.' Opp'n at 26–27; *see also* Compl. ¶ 74.  The Circuit recently made crystal clear, however, that section 555(b) does not impose a clear, non-discretionary duty on a "consular officer to re-adjudicate [an] already-refused [visa] application."  *Karimova*, 2024 WL 3517852, at *3.  That being so, Plaintiffs may not rely on "[s]ection 555(b) of the APA as the source of the consular officer's alleged duty to act."  *Id.*  Again, though, the Court need not scour Plaintiffs' complaint and

opposition briefing to determine whether they have alleged a clear, non-discretionary duty stemming from another source; their claims fail on the merits.

### D.  Unreasonable Delay

Finally, the Court turns to Defendant's argument that Plaintiffs' complaint fails to state a plausible claim of unreasonable delay.  *See* Def.'s Mot. at 18.  Simply put, Defendant contends that Plaintiffs fail to state a plausible claim because the delay here—roughly twenty-six-months—"is not unreasonable as a matter of law."[4]  *Id.*

Plaintiffs' claim of unreasonable delay is governed by the APA, which requires an agency to "proceed to conclude a matter presented to it" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).  "The 'central question in evaluating a claim of unreasonable delay is whether the agency's delay is so egregious as to warrant mandamus.'" *Babaei v. U.S. Dep't of State*, No. 23-cv-1244, 2024 WL 1178453, at *5 (D.D.C. Mar. 19, 2024) (quoting *In re Core Commc'ns., Inc.*, 531 F. 3d 849, 855 (D.C. Cir. 2008)).  Courts in this circuit consider six factors (the so-called "*TRAC* factors") when evaluating unreasonable-delay claims:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that

---

[4] The parties disagree regarding the length of the delay.  *Compare* Pls.' Opp'n at 2, *with* Def.'s Mot. at 3.  In similar cases, courts have assessed delays in visa processing using the period between "the last [g]overnment action" and the issuance of the opinion.  *See, e.g.*, *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021) (analyzing a seventeen-month delay between "the last [g]overnment action" and the opinion's issuance); *Eljalabi v. Blinken*, No. 21-cv-1730, 2022 WL 2752613, at *5 (D.D.C. July 14, 2022) (analyzing a twenty-two-month delay between NVC's last action and the opinion's issuance).  The last clear [g]overnment action occurred on April 26, 2022, when the consular officer refused Plaintiffs' visa applications under section 221(g), to conduct additional security screening.  *See* Compl. ¶¶ 6, 45.  Therefore, the period the Court will use to analyze any unreasonable delay in the instant case is the roughly twenty-six-month span between the consular officer's refusal and the issuance of this Opinion.

> statutory scheme may supply content for this rule of reason; (3) delays that might
> be reasonable in the sphere of economic regulation are less tolerable when human
> health and welfare are at stake; (4) the court should consider the effect of
> expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests
> prejudiced by delay; and (6) the court need not find any impropriety lurking
> behind agency lassitude in order to hold that agency action is unreasonably
> delayed.

*Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984)

(cleaned up); *see also Da Costa*, 80 F.4th at 340 (applying TRAC factors to "guide . . .

unreasonable-delay analysis" in immigration case).

Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some

number of months or years beyond which agency inaction is presumed to be unlawful, but will

depend in large part . . . upon the complexity of the task at hand, the significance (and

permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag

Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Courts use the *TRAC*

factors to assess claims of unreasonable delay under both the Mandamus Act and the APA. *See

S. Utah Wilderness All.*, 542 U.S. at 63–64; *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C.

Cir. 2016). Applying the *TRAC* factors to the present case, the Court finds that the

Sharifishourabi family's complaint fails to state a plausible claim that action on their visa

applications has been unreasonably delayed.

### 1. *TRAC* Factors 1 and 2

The first and second *TRAC* factors—relating to "the rule of reason" and whether

Congress has provided a timetable for agency action—weigh in Defendant's favor. Generally,

the first *TRAC* factor is the "most important" and carries the most weight. *See In re Core

Commc'ns*, 531 F. 3d at 855. Courts typically consider the first and second factors together,

however, as both analyze whether there is "sufficient rhyme and reason to explain the

[g]overnment's response time." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 166 (D.D.C. 2021) (cleaned up); *see also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

Here, Plaintiffs' applications have been delayed for just over two years. Although Plaintiffs allege that the timeframe established by Congress in 8 U.S.C. § 1571(b)—which states that DOS must adjudicate immigration benefits within 180 days—applies to the instant case, *see* Pls.' Opp'n at 37, Defendant is correct that no statutory or regulatory framework compels DOS to adjudicate EB-2 applications within a specific timeframe, *see* Def.'s Mot. at 20–21.[5] That being so, the Court "'turn[s] to case law as a guide' to determine the reasonableness" of Defendant's delay in processing Plaintiffs' visa applications. *See Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable." *Id.* (quoting *Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable. *See, e.g.*, *Eljalabi*, 2022 WL 2752613 at *6 (finding that a nearly-two-year delay was not sufficient to tilt the first two *TRAC* factors in favor of the plaintiff); *Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at *9 (D.D.C. Aug. 11, 2021) (finding that a forty-four-month delay was not unreasonable as a matter of law). And indeed, recently, the D.C. Circuit found that a delay of four-and-one-half years was not unreasonable. *See Da Costa*, 80 F.4th at 342. Although Plaintiffs point to decisions in other jurisdictions that have found shorter delays to be unreasonable, *see* Pls.' Opp'n at 36, this Court

---

[5] The statute upon which Plaintiffs rely specifically concerns the purposes and policies underpinning the now-defunct Immigration Services and Infrastructure Improvements Act of 2000, and as such, Plaintiffs' reliance on a "precatory" and "non-binding" "sense of Congress," *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 528 n.26 (D.C. Cir. 2015), is misplaced.

is persuaded by the overwhelming trend within this circuit.  It finds, therefore, that, given the circumstances, Defendant's delay of just over two years is not unreasonable.

Dr. Sharifishourabi and his family resist this conclusion by attempting to distinguish the EB-2 national interest waiver visa matter at hand from prior case law concerning other types of visa applications, including immigrant and nonimmigrant applications, as well as from cases decided in the wake of the COVID-19 pandemic and subsequent slowdown in worldwide visa processing times.  *See* Pls.' Opp'n at 32–36.  However, Plaintiffs do not articulate a compelling rationale explaining why EB-2 applications in general, or their applications specifically, necessitate judicial intervention at this juncture.  *See id.* at 37 ("[T]he U.S. employer could not fully enjoy the knowledge, skills, and abilities of Dr. Sharifishourabi; the country further cannot benefit from the tax income that would be generated when the family entered and gainfully employed in the U.S.").  Absent more, this Court hesitates to intervene in a delay of just over two years predicated on a consular officer's determination that additional security vetting is warranted.  The first two *TRAC* factors weigh in Defendant's favor.

## 2.  *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors also tilt in Defendant's favor.  These factors evaluate whether human health and welfare are at stake and if there are interests that would be prejudiced by the visa processing delay.  *See TRAC*, 750 F.2d at 80.  On this front, Plaintiffs allege that the delay in adjudicating their applications has detrimentally impacted their "emotional[] and psychological[]" well-being by disrupting Dr. Sharifishourabi's career progression, generating

financial instability, making it more difficult for the parents to plan for their children's education, and preventing the family from "put[ting] [down] roots."[6]  *See* Pls.' Opp'n at 39.

Although the Court is sympathetic to the Sharifishourabi family's situation, it agrees with Defendant that Plaintiffs' position is not unique.  *See* Def's. Mot. at 24.  Seeking employment-based admission to the United States necessarily entails some amount of career, economic, and educational uncertainty.  Unlike in some other cases where prolonged family separation or underlying health concerns tied specifically to the delay at issue drove courts to find that *TRAC* factors three and five weighed in plaintiffs' favor, the Sharifishourabi family lives together in Canada, a safe and prosperous country with a generous healthcare system, and does not face separation or injury to health because of further delay.  *See, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding the third and fifth *TRAC* factors weighed in favor of the plaintiffs considering prolonged separation of spouses); *Varghese v. Blinken*, No. 21-cv-2597, 2022 WL 3016741, at *7 (D.D.C. July 29, 2022) (similar); *Pourshakouri v. Pompeo*, 2021 WL 3552199 at *10 (D.D.C. Aug. 11, 2021) (finding third and fifth factors weighed in favor of 83-year-old plaintiff living alone and separated indefinitely from children and grandchildren). The Court finds, therefore, that the harms Plaintiffs allege are insufficient to tip the scales in their favor and, instead, that the third and fifth *TRAC* factors tilt (at least slightly) towards the Secretary.

---

[6] In their opposition to Defendant's motion to dismiss, Plaintiffs further allege that Ms. Zamanishourabi "is suffering from postpartum depression without her parents to take care of her and her child."  Pls.' Opp'n at 39.  But no mention of Ms. Zamanishourabi's alleged postpartum depression or parents residing within the U.S. was present in Plaintiffs' original complaint.  *See King v. Triser Salons, LLC*, 815 F. Supp. 2d 328, 332 (D.D.C. 2011) (explaining that where plaintiffs' "opposition to the motion to dismiss proffers additional facts" a court "may only consider the facts set forth in the complaint when evaluating a motion to dismiss").  Even if the Court were to consider the further alleged harm, however, the Court's overall substantive analysis as to the *TRAC* factors would not meaningfully change.

3. *TRAC* Factor 4

The Court next considers the fourth *TRAC* factor—a factor which carries substantial weight. *See Da Costa*, 80 F.4th at 340, 343. The fourth factor "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* at 343 (quoting *TRAC*, 750 F.2d at 80). Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to "the head of the queue" and "simply move[] all others back one space and produce[] no net gain." *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991). In fact, the D.C. Circuit "has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Milligan*, 502 F. Supp. 3d at 319 (quoting *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100) (alterations and quotations omitted).

The Circuit's recent decision in *Da Costa* aptly illustrates these principles. There, the plaintiffs sought an order compelling USCIS to adjudicate their visa applications within fourteen days, to process any additional requested information within seven days, and to forward any approved applications to the NVC for processing within three days. *See Da Costa*, 80 F.4th at 344. In finding that the fourth *TRAC* factor weighed against the plaintiffs, the Circuit explained that the relief the plaintiffs sought was, at bottom, an order that would move their visa petitions "ahead of longer-pending petitions." *Id.* at 343. The court looked unfavorably on such a request in large part because "moving [the] [p]laintiffs' petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the USCIS backlog." *Id.* The court also emphasized that, although "judicial intervention could assist [the plaintiffs], it would likely impose offsetting burdens on equally worthy" applicants that were "equally wronged by the

agency's delay." *Id.* at 344 (quoting *In re Barr Labs.*, 930 F.2d at 73).   The judges concluded, therefore, that "the effect that [the plaintiffs'] requested relief would have on the queue of petitioners waiting ahead of the [p]laintiffs, weighs against judicial intervention to expedite adjudication of [p]laintiffs' petitions." *Id.*

The same is true here.  Although the underlying administrative process in this case (*i.e.*, conducting security investigations) does not appear to be addressed or resolved in a first-in-first-out basis, *see* Pls.' Opp'n at 33, compelling agency action on Plaintiffs' applications would "impose offsetting burdens on equally worthy" applicants by effectively putting Plaintiffs "at the head of the queue," thereby "mov[ing] all others back one space and produc[ing] no net gain," *In re Barr Labs.*, 930 F.2d at 73, 75.  And despite Plaintiffs' assertions that they "should already be at the front of the 'queue,'" Pls.' Opp'n at 40, there are likely thousands of similarly situated applicants who have waited equally as long or longer, *see* Ex. C, Pls.' Opp'n, Decl. of Carson Wu at ¶ 4, ECF No. 10-3.  Granting Plaintiffs' requested relief would therefore "necessarily come at the expense of similarly situated applicants." *Da Costa*, 80 F.4th at 340 (internal quotation marks omitted) (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).  Moreover, granting Plaintiffs their requested relief would require the State Department to "reorder[] [its] priorities" in a case where the "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way." *In re Barr Labs.*, 930 F.2d at 76.  This, the D.C. Circuit has admonished, is something that courts should not do.  *See id.*  For all of these reasons, the Court finds that the fourth *TRAC* factor weighs in Defendant's favor.

### 4.   *TRAC* Factor 6

The sixth *TRAC* factor, on the other hand, does not weigh in either party's favor.  This factor requires courts to "determine whether the agency has acted in bad faith in delaying

action."  *See Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-3680, 2021 WL 736810, at

*5 (D.D.C. Feb. 25, 2021).  Plaintiffs allege that Defendant's failure to adjudicate their visas

"without any substantial update is an act of extreme bad faith on the part of Defendant while

knowing the extreme hardship of Plaintiffs."  *See* Pls.' Opp'n at 42.  Although the Court agrees

with Plaintiffs that there is no clear evidence of *good faith* efforts made by the government, *see*

*id.*, and echoes Defendant's concession that a lack of information may be frustrating to Plaintiffs,

*see* Def's. Mot. at 25, Plaintiffs ultimately allege no facts amounting to *bad faith*.  That said, "the

lack of plausible allegations of impropriety do[] not weigh against [Plaintiffs], and therefore do[]

not alter the Court's analysis."  *See Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL

6976073, at *11 (D.D.C. Oct. 23, 2023); *see also Da Costa*, 80 F.4th at 345–46 (finding the sixth

*TRAC* factor "neutral" where plaintiffs' allegations of bad faith were "conclusory and

implausible"); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (considering the sixth

*TRAC* factor "neutral" even though plaintiff alleged that the government had engaged in

"purposeful delay" and "artificially inflate[d] . . . processing times").

### 5.  *TRAC* Factors Considered Together

In sum, the balance of the *TRAC* factors weighs strongly in favor of Defendant.  The

preceding analysis should not be interpreted to suggest that Defendant's delay in adjudicating

any outstanding security concerns will remain reasonable indefinitely, nor should the opinion be

read to imply that the Court does not sympathize with Dr. Sharifishourabi and his family's

frustration and uncertainty.  As of now, however, Plaintiffs have failed to state a plausible claim

of unreasonable agency delay.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 7) is **GRANTED** and Plaintiffs' motion to compel (ECF No. 8) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 29, 2024                                                   RUDOLPH CONTRERAS
                                                                        United States District Judge